UNITED STATES DISTRICT COURT
DISTRICT OF MAS.S.ACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>vs.<br><br>FORTUNE AIKOROGIE, a/k/a<br>IMUETINYAN AIKOROGIE, a/k/a<br>FORTUNE AIKORIOGIE, a/k/a<br>IMUETINYAN AIKORIOGIE,<br><br>Defendant. | Crim. No. 19-10085-RWZ |

## UNITED STATES' SENTENCING MEMO

On July 7, 2020, the defendant, Fortune Aikorogie ("AIKOROGIE"), pled guilty to all seven counts in the indictment: False Statement to a Bank, in violation of 18 U.S.C. § 1014 (Count One); Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Counts Two through Six); and Passport and Visa Fraud, in violation of 18 U.S.C. § 1546(a) (Count Seven). Sentencing is scheduled for December 3, 2020. There is no plea agreement.

For the reasons stated herein, the government respectfully requests that the Court sentence AIKOROGIE to 24 months in prison and three years of supervised release. The government also respectfully requests that the Court order AIKOROGIE to pay restitution in the amount of $66,767, forfeiture in the amount of $75,500, and a special assessment of $700.

## FACTS

AIKOROGIE served as a "catcher" in an online romance scam that robbed vulnerable victims of more than $180,000. A catcher opens bank accounts using fake identity documents, quickly withdraws funds after victims deposit money into those accounts, and transfers the money to co-conspirators. *See* "Austin-Based Nigerian Money Launderer Sentenced to Federal Prison for Romance Scams," https://www.justice.gov/usao-wdtx/pr/austin-based-nigerian-

money-launderer-sentenced-federal-prison-romance-scams (July 17, 2018).

Most victims of fraud scams, including romance scams, are vulnerable. "Most victims who become the targets of fraud scams are considered to be in the naïve segments of the population." Association of Certified Fraud Examiners, "Elderly Fraud Scams: How They're Being Targeted and How to Prevent It," *available at* https://www.acfe.com/fraud-examiner.aspx?id=4294997223. The most frequent targets of fraud scams are older persons. *Id*.

> Each year, millions of elderly Americans fall victim to some type of financial fraud or confidence scheme, including romance, lottery, and sweepstakes scams, to name a few. Criminals will gain their targets' trust and may communicate with them directly via computer, phone, and the mail; or indirectly through the TV and radio. Once successful, scammers are likely to keep a scheme going because of the prospect of significant financial gain.
>
> Seniors are often targeted because they tend to be trusting and polite. They also usually have financial savings, own a home, and have good credit—all of which make them attractive to scammers.
>
> Additionally, seniors may be less inclined to report fraud because they don't know how, or they may be too ashamed at having been scammed. They might also be concerned that their relatives will lose confidence in their abilities to manage their own financial affairs. And when an elderly victim does report a crime, they may be unable to supply detailed information to investigators.

"Scams and Safety – Elder Fraud," https://www.fbi.gov/scams-and-safety/common-scams-and-crimes/elder-fraud. A common scam used to prey on elders is the romance scam, where criminals pose as interested romantic partners to capitalize on their elderly victims' desire to find companions. *Id.* "[C]riminals who carry out romance scams are experts at what they do and will seem genuine, caring, and believable." https://www.fbi.gov/scams-and-safety/common-scams-and-crimes/romance-scams.

AIKOROGIE and his confederates capitalized on lonely individuals' desire to find companions, using promises of love and even marriage to persuade the victims to wire large sums of money into accounts that AIKOROGIE opened using counterfeit foreign passports.

AIKOROGIE may not have wooed the victims. But he surely understood that people who were wiring large sums of money within a very short period of time into accounts he had opened in the name of individuals who *did not exist* were financially naïve. In other words, AIKOROGIE knew or should have known that he was part of a scheme that preyed on vulnerable victims.

The indictment identifies two individuals, "Victim 1" and "Victim 2," who, within just two months, wired a total of $75,500 into a bank account that AIKOROGIE had opened using a counterfeit Zimbabwean passport, visa, and driver's license in the name of "Tinashi Chipo." AIKOROGIE quickly withdrew the victims' money in cash and gave the money to two different men he did not know. One was a Nigerian man he met at a mall in Dorchester. AIKOROGIE, a naturalized citizen from Nigeria, believed that the money would be delivered to Nigeria. When interviewed by law enforcement, he said he did not know what the money was used for and did not want to know because, he said, Nigeria is a corrupt country. AIKOROGIE described the man who had mailed him the counterfeit "Tinashi Chipo" documents as a "gang member" in an "organization." He said: "I won't be the last person to help in running this scheme for them."

AIKOROGIE lied to the interviewing officers, stating that "Tinashi Chipo" was the only false identity he had ever used at a bank. In fact, AIKOROGIE opened at least four bank accounts using counterfeit foreign passports in different fake names: "Tinashi Chipo," "Adrian Jayden," "Murphy Cameron," and "Amadou Diallo."[1] Altogether, seven victims wired a total of $188,600 into these accounts in just six months.

---

[1] It appears that AIKOROGIE was prepared to open or help others open additional bank accounts in fake identities to prey on more vulnerable victims. How else to explain the *five* additional counterfeit foreign passports (and driver's licenses, credit and debit cards, and checkbooks) that agents seized when they executed federal search warrants at AIKOROGIE's apartment and at the address where he received his mail. *See* PSR ¶¶ 31-32.

### Victim 1

Victim 1 is a 72-year old widow with advanced Parkinson's disease. She resides at an assisted living facility in Houston, Texas. In 2016 she lived in her own apartment and received round-the-clock care at home.

Victim 1 retired from her job at age 58 due to her Parkinson's disease. Her husband died three years later. In or about 2016, Victim 1 met someone using the name "Morris Crystal" over Facebook. Morris began romancing Victim 1 online and over the telephone. Victim 1 was lonely and welcomed the attention. She was impressed with the breadth of Morris's knowledge of music and instruments. She has described him as "caring and passionate." He repeatedly told Victim 1 that he loved her. Victim 1 never met Morris in person. He texted her photos that he said were of him. Sometimes Morris put his "son," "Mario," on the phone to speak with Victim 1 and they exchanged pleasantries. Morris claimed to be a building engineer living in Jacksonville, Florida. He told Victim 1 that he had been awarded a construction contract in Malaysia. After he allegedly arrived in Malaysia, Morris began asking Victim 1 for money for various reasons, including to pay foreign taxes, to help with an equipment repair, to cover his hospital bills when he fell ill, and to pay a court judgment that he said he owed when two of his Malaysian workers died. Morris always promised to repay Victim 1. Some of the payments he asked her to make were to the "Tinashi Chipo" bank account in Massachusetts. Morris described Tinashi Chipo as someone who knew his manager. At Morris's request, Victim 1 sent four wires totaling $55,000 from her bank account in Texas to the Chipo account controlled by AIKOROGIE (Counts Two-Five of the indictment). Like all of AIKOROGIE's victims, she never got her money back.

### Victim 2

Victim 2 also lives in Texas. She is 79 years old and divorced. She worked for twenty

years in the Harris County, Texas district court clerk's office. She retired in 1998. Victim 2 filed for bankruptcy in or about 2008. Her only income is social security and a small pension. She currently rents a room in another person's house.

In or about 2015, Victim 2 met someone using the name "Christopher Hawley" over Facebook. At the time, Victim 2 owned a house and a car and had no credit card debt. "Chris" began romancing Victim 2 online and over the telephone, communicating with her multiple times a day. Chris claimed to be a widower in Pennsylvania with a college-age daughter. To Victim 2, Chris sounded "reliable" and was "easy to talk to." Chris told Victim 2 that he was traveling to Malaysia for his job. After he allegedly arrived in Malaysia, he started asking her for money for various reasons, including to help pay medical bills, taxes, and lodging expenses. Victim 2 sent Chris money using Western Union and MoneyGram. Chris told Victim 2 that he needed more money and persuaded her to sell her house. He said he would sell his house in Pennsylvania, and, when he returned to the United States, they would buy a house together. Chris asked Victim 2 to marry him on Valentine's Day 2017. She told him she would wait for his return so that he could ask her in person. Chris asked Victim 2 to wire money to the "Tinashi Chipo" account to help him get home, saying Chipo would get the money to him. Victim 2 took $20,500 from the proceeds of the sale of her house and wired it from her bank account in Texas to the Chipo account controlled by AIKOROGIE (Count Six).

**Victim S.S.**

S.S. is 59 years old and lives in Xenia, Ohio. She was wooed by an online suitor who called himself "Willie Johnson." Willie claimed he was an architectural engineer from Columbus, Ohio. He said that he had won a large contract in Turkey and was traveling there. He asked S.S. to send money for various reasons, including taxes, hospital bills for workers injured

at his worksite, funeral bills for an employee who died at his worksite, legal expenses, and airport and overstay fees. Eventually he claimed to have been kidnapped. The alleged kidnappers contacted S.S. using what she understood to be Willie's phone number, sending photos and demands for ransom. S.S. was told to wire amounts to the "Adrian Jayden" and "Cameron Murphy" accounts because, Willie said, those recipients would be able to access the funds in Turkey. S.S. wired $83,100 into the Jayden and Murphy accounts controlled by AIKOROGIE. S.S. wired thousands more to other accounts at other banks in other names, all at Willie's request. She estimates that she lost about $125,000 altogether.

### Victim H.N.

H.N. is a 53-year old Vietnamese immigrant who lives in Fort Worth, Texas. She can understand and speak English but cannot write it, describing herself as "illiterate." She sent money to the "Adrian Jayden" account at the request of an online suitor who called himself "Ken Rolando." In May or June 2016, Ken sent H.N. an unsolicited message on Facebook. She was recently divorced and lonely, and welcomed Ken's attention. In August 2016, Ken told H.N. that he had traveled to Malaysia for business purposes and needed money for a flight home. Ken asked her to wire money to the account of Adrian Jayden, whom he described as a friend who would be able to get the money to him. She wired money in incremental amounts because Ken kept telling her the ticket was more expensive than he had previously thought. After her last payment, she never heard from Ken again.

## SENTENCING RECOMMENDATION

The government agrees with Probation that AIKOROGIE's adjusted offense level is 17 and that he falls in Criminal History Category I, yielding a Guidelines sentencing range of 24-30 months. *See* PSR ¶¶ 62, 67, 100.

The government recommends a sentence of 24 months imprisonment, three years of supervised release, $66,767 in restitution[2], and a $75,500 forfeiture money judgment[3]. The proposed sentence is sufficient but not greater than necessary, considering (1) the nature and circumstances of the offenses and the characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offenses, promote respect for the law, provide just punishment, and provide general and specific deterrence; (3) the kinds of sentence available; (4) the kinds of sentence and the sentencing range established by the Sentencing Guidelines; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[4]; and (6) the need to provide restitution to the victims. *See*

---

[2] Victim 1 is entitled to restitution in the amount of her loss, $55,000. Victim 2 is entitled to restitution in the amount of her loss, $11,767.50 ($20,500 minus $8,732.50, which was deducted from the Tinashi Chipo account and credited to Victim 2's account after AIKOROGIE's crimes were discovered, *see* PSR n.3). As noted in ¶ 111 of the PSR, these restitution awards are mandatory. *See* 18 U.S.C. § 3663A(a)(1). That is because AIKOROGIE has been convicted of concealment money laundering, which is an "offense against property" as that term is used in 18 U.S.C. § 3663A(c)(1)(A)(ii). *See United States v. Paradis*, 219 F.3d 22, 24-25 (1st Cir. 2000).

Regrettably, the government does not believe that the Court is authorized to award restitution to the other victims since there is no plea agreement in which AIKOROGIE agreed to pay them restitution. Absent a plea agreement, a court may award restitution to victims harmed as a result of the commission of an offense "that involves as an element a scheme, conspiracy, or pattern of criminal activity." 18 U.S.C. § 3663(a)(2). The elements of money laundering in violation of 18 U.S.C. § 1956, however, do not include a scheme, conspiracy, or pattern of criminal activity. *See United States v. Neal*, 36 F.3d 1190, 1201 (1st Cir. 1994) (holding that restitution is unavailable under Section 3663(a)(2) for money laundering victims whose losses fall outside the counts of conviction because the offense does not involve proof of a scheme, conspiracy, or pattern of criminal activity as an element).

[3] $75,000 is the total proceeds from AIKOROGIE's money laundering to which he pled guilty (Counts Two-Six). *See* 18 U.S.C. § 982(a)(1). The government has filed a Motion for Order of Forfeiture (Money Judgment). Doc. No. 54.

[4] *See, e.g., United States v. Akande*, No. 4:19-cr-00960-AGF-1, Doc. No. 70 (E.D. Mo. Oct. 8, 2020) (imposing 63-month sentence on man who received money from romance scam victims and sent the money to Nigeria); https://www.justice.gov/usao-edmo/pr/judge-sentences-st-louis-man-role-romance-scheme-targeting-elderly-community; *United States v. Shumpert*, 3:18-cr-00582-VC-1, Doc. No. 32 (N.D. Cal. Feb. 24, 2020) (imposing 42-month sentence on

18 U.S.C. §3553(a).

AIKOROGIE's sentence must provide specific deterrence. The seizure of five additional counterfeit passports from AIKOROGIE's addresses is significant. *See supra* n.1. He was ready to open more bank accounts in fake identities to defraud even more victims. The only reason AIKOROGIE's fraud ceased is because law enforcement arrested him and seized his counterfeit identity documents.

AIKOROGIE's sentence must also provide general deterrence. "In all white-collar cases, the interest of general deterrence is important." *United States v. Pena*, 463 F. Supp. 3d 118, 126 (D. Mass. 2020). AIKOROGIE admitted that other people are willing to step into his shoes and continue to perpetrate this fraud scheme. He told law enforcement officers, "I won't be the last person to help in running this scheme for them." Whoever these replacement fraudsters are, they – and anyone else who is solicited to participate in a scam that targets emotionally vulnerable individuals, including elderly and/or lonely victims – need to understand that their actions can have devastating effects even beyond financial loss. *See, e.g.*, https://www.justice.gov/usao-wdtx/pr/austin-based-nigerian-money-launderer-sentenced-federal-prison-romance-scams ("one of the victims who sent money to [the defendant] took her own life after losing hundreds of thousands of dollars and being emotionally devastated by a romance scam"). And they need to understand that the punishment for participating in a fraud scam will not be a mere slap on the wrist. It will include significant prison time.

---

romance scammer); https://www.justice.gov/usao-ndca/pr/fraudster-sentenced-three-and-half-years-prison-romance-scam; *United States v. Otuya*, No. 1:18-cr-00061-RP-1, Doc. No. 36 (W.D. Tex. July 20, 2018) (imposing 135-month sentence on Nigerian man who received money from romance scam victims and sent the money to conspirators); https://www.justice.gov/usao-wdtx/pr/austin-based-nigerian-money-launderer-sentenced-federal-prison-romance-scams; *United States v. Amoo*, No. 4:16-cr-00181, Doc. Nos. 62, 64 (S.D. Tex. Dec. 19, 22, 2016) (sentencing two Nigerian romance scammers to 36 months each); https://www.justice.gov/usao-sdtx/pr/two-ordered-federal-prison-involvement-romance-scam-conspiracy.

        Respectfully submitted,

        ANDREW E. LELLING
        United States Attorney

        By: */s/ Christine Wichers*
        CHRISTINE WICHERS
        Assistant U.S. Attorney

**Certificate of Service**

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants, on November 28, 2020.

        */s/ Christine J. Wichers*
        Christine J. Wichers